## UNITED STATES *v.* JORDAN.

### APPEAL FROM THE COURT OF CLAIMS.

Submitted January 26, 1885.—Decided March 2, 1885.

Under the act of Congress of July 29, 1882. 22 Stat. 723, ch. 359, providing for the refunding to the persons therein named of the amount of taxes assessed upon and collected from them contrary to the provisions of the regulations therein mentioned, "that is to say, to" each of such persons the sum set opposite his name, each of them is entitled to be paid the whole of that sum, and no discretion is vested in the Secretary of the Treasury, or in any court, to determine whether the sum specified was or was not the amount of a tax assessed contrary to the provisions of such regulations.

The facts which make the case are stated in the opinion of the court.

*Mr. Assistant Attorney-General Maury* for appellant.

*Mr. Charles F. Benjamin* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

On the 29th of July, 1882, an act of Congress was passed, 22 Stat. 723, ch. 359; providing "that the Secretary of the Treasury, be, and he is hereby, authorized and directed to remit, refund and pay back, out of any moneys in the treasury not otherwise appropriated, to the following named citizens of

Tennessee, or the legal representatives of such as are deceased, the amount of taxes assessed upon and collected from 'the said named persons contrary to the provisions of the regulations issued by the Secretary of the Treasury, under date of June· twenty-first, eighteen hundred and sixty-five, and published in special circular numbered sixteen, from the Internal Revenue office, of that date, said refunding having been recommended by the Secretary of the Treasury, under date of June nineteenth, eighteen hundred and seventy-three, that is to say, to "—followed by the names of 81 persons, and the specification of a sum of money opposite each name, and, among them, this: " to Edward L. Jordan, two thousand two hundred and ninety dollars; . . . all of Rutherford County, Tennessee; . . . said persons, and each of them, having filed their claims in the office of the Commissioner of Internal Revenue prior to the sixth of June, eighteen hundred and seventy-three."

Afterwards, and on the 6th of September, 1882, the acting Commissioner of Internal Revenue transmitted to the Secretary of the Treasury, for his action, the claim of Edward L. Jordan, to be paid $2,290, under the act. On that letter, under date of September 11, 1882, the acting Secretary of the Treasury indorsed an order directing that Jordan be paid that sum. He was paid one-half of it, $1,145, on November 2, 1882, but payment of anything more was refused. On the 1st of December, 1882, he brought a suit against the United States, in the Court of Claims, to recover the remaining $1,145. On December 7, 1882, the Secretary of the Treasury indorsed on the order of September 11, 1882, the following: " The foregoing order of September 11, 1882, is construed to mean only that such sums shall be refunded or paid as were collected from the persons within named contrary to the provisions of the regulations issued by the Secretary of the Treasury under date of June 21, 1865, mentioned in said act, and effect is to be given to said order accordingly." The Court of Claims gave judgment for the claimant for $1,145, 19 C. Cl. 108, and the United States have appealed.

At the request of the counsel for the defendants, the court found the following facts:

"Claimant resided in the second collection district of Tennessee, in Rutherford County. May 5, 1864, an internal revenue assessor was first appointed for this district.

August 30, 1864, an assessment division of the district, comprising Rutherford County, was first established.

June 6, 1865, the claimant paid the collector of this district $1,145, as annual income tax for the year 1863, under the requirements of the act of July 1, 1862, chapter 119, 12 Stat. 473, 474, and $1,145 as the special 5 per cent. war income tax for the year 1863, under the requirements of the joint resolution of July 4, 1864, No. 77, 13 Stat. 417.

June 21, 1865, the Secretary of the Treasury issued Special Circular No. 16, containing the following among other regulations:

'Section 46 of the internal revenue act approved June 30, 1864, 13 Stat. 240, provides that whenever the authority of the United States shall have been re-established in any State where the execution of the laws had previously been impossible, the provisions of the act shall be put in force in such State, with such modification of inapplicable regulations in regard to assessment, levy, time, and manner of collection as may be directed by the Department.

Without waiving in any degree the rights of the government in respect to taxes that have heretofore accrued, or assuming to exonerate the tax-payer from his legal responsibility for such taxes, the Department does not deem it advisable to insist at present upon their payment, so far as they were payable prior to the establishment of a collection district embracing the territory in which the tax-payer resides.

But assessors in the several collection districts recently established in the States lately in insurrection are directed to require returns and to make assessments for the several classes of taxes for the appropriate legal period preceding the first regular day on which a tax becomes due after the establishment of the district. . . .

In the States of Virginia, Tennessee, and Louisiana, collection districts were some time since established, with such boundaries as to include territory in which it has but recently become

possible to enforce the laws of the United States. In those districts the rule laid down above will be so modified as to require the assessment and collection of the first taxes which become due after the establishment of assessment divisions in the particular locality. . . .'

June 19, 1873, the Secretary of the Treasury addressed to the Commissioner of Internal Revenue the following letter, which is referred to in the act of Congress:

'TREASURY DEPARTMENT, OFFICE OF THE SECRETARY,
WASHINGTON, *June* 19, 1873.

SIR: I have considered the claim of William Gosling and others, applicants for refunding taxes alleged to have been illegally collected, included in schedule No. 243, from your office, and am of opinion, that, under the existing laws, the taxes paid by these parties were legally paid and should not be refunded. But I fully recognize the hardship of the case, and desire that such claimants may receive relief from Congress.

I have, therefore, to suggest, that you will, in your next annual report, or on any other occasion which you may deem more fitting, recommend the passage of a special act authorizing the refunding of all taxes paid by residents of the insurrectionary States, which, under Department Circular of June 21st, 1865, should not have been collected, such refunding to, be made whether the tax in question was collected before or after the issue of the circular.

I am, very respectfully,
WILLIAM A. RICHARDSON,
*Secretary of the Treasury.*'"

It is stated in the brief for the United States, that the payment of the $1,145 was refused, by the accounting officers of the Treasury, on the ground that the statute authorized payment of only " so much of the sum named as might be determined at the Treasury to represent the amount of taxes assessed and collected contrary to the regulations of the Secretary of the Treasury named in the act," and that the sum paid to the claimant was the sum total of the taxes that had been improp-

erly collected from him. From the published decision of the
First Comptroller in the case, 3 Lawrence's Dec. 274, the
ground of refusal appears to have been the one above stated,
and the opinion of the Court of Claims in this case shows that
such ground was urged before that court, and rejected.

The view taken by the Treasury officers was, that the annual
income tax of $1,145, for the year 1863, under the act of July
1, 1862, became, by the statute, due and payable May 1,
1864, before the assessment division which comprised Ruther-
ford County was established, and, under the Treasury reg-
ulations of June 21, 1865, in Circular No. 16, which required
the collection only of " the first taxes which became due after
the establishment of assessment divisions," that sum of $1,145
was collected contrary to the provisions of those regulations,
and was to be refunded, although it was collected before the
date of the circular. But the Treasury officers decided that
the $1,145 paid for the special income tax under the joint res-
olution of July 4, 1864, and which, by law, did not become
due till October 1, 1864, after the establishment of such assess-
ment division, was not collected contrary to the provisions of
those regulations, and was not to be refunded.

The Court of Claims held that the statute did not admit of
that interpretation, nor leave open any question for the court
or for the accounting officers of the Treasury, except the iden-
tity of the claimants with the persons named in it; and that
its language, taken together, was too clear to admit of doubt,
that Congress undertook, as it had a right to do, to determine
not only what particular citizens of Tennessee by name should
have relief, but also the exact amount which should be paid to
each one of them. We concur in this view. The act author-
izes and directs the Secretary of the Treasury to pay to the sev-
eral persons named the respective sums named. Although the
act speaks of the sums as being " the amount of taxes assessed
upon and collected from the said named persons contrary to the
provisions of the regulations " named, there is no indication of
any intention to submit to any one the determination of the
question whether the taxes in any case were collected contrary
to the provisions of such regulations, or of the question how

those provisions are to be construed. On the contrary, the clear import of the statute is that Congress itself determines that the amounts named were collected contrary to the provisions of the regulations. The statement in the statute that the refunding had been recommended by the Secretary of the Treasury under date of June 19, 1873, refers to the letter of that date, set forth in the findings, which recommends the passage of an act to refund all taxes which, under the circular of June 21, 1865, "should not have been collected, such refunding to be made whether 'the tax in question was collected before or after the issue of the circular." The claimant's two income taxes were both of them paid before the circular was issued. In one sense, therefore, they were not collected "contrary to the provisions of the regulations;" and, in that sense, it was wrong to refund anything to the claimant, under the language of the act. But with the specification, in the act, of the name and the amount, no such construction can be given to it as would prevent the refunding of anything because the whole amount had been paid before the issuing of the regulations; and, if anything is to be paid, the whole must be. If there is discretion confided to any officer or court to inquire whether the claimant's taxes were collected contrary to the regulations, there would be like discretion to inquire whether such taxes were embraced in the letter of June 19, 1873, and whether the claimant had filed his claim before June 6, 1873. No such construction is applicable to a statute of this character.

It is not an improper inference, from the language of the statute, that Congress intended to refund the taxes covered by the recommendation of the Secretary of the Treasury, in his letter of June 19, 1873. That letter covers taxes described as those which, under the circular, "should not have been collected," though collected before it was issued. Congress may, therefore, have included some taxes collected before the circular was issued, but which it thought should not have been, or ought not to have been, collected, in the sense intended by the Secretary.

The judgment of the Court of Claims is       *Affirmed.*